**L. U. WEST, Trading and doing business as L. U. West Lumber Company, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. A. 499.**

United States District Court
N. D. Florida, Tallahassee Division.

Aug. 2, 1956.

John M. McCants, Tallahassee, Fla., for plaintiff.

Wilfred C. Varn, Asst. U. S. Atty., Tallahassee, Fla., for defendant.

DE VANE, Chief Judge.

This case originated in this Court as a suit by plaintiff to recover from defendant the balance due on a contract between the parties.

Defendant in its answer admits the contract and admits the balance sued for as being due by defendant to plaintiff under said contract. Defendant, however, filed a counterclaim in the case in which it seeks to recover from plaintiff the exact amount remaining due plaintiff because of the alleged breach of another contract by plaintiff with defendant.

It is stipulated by the parties that plaintiff is entitled to recover on his suit and that the only issue before the Court in the case is whether defendant is entitled to recover on its counterclaim.

The case is before the Court on motion filed by each party for Summary Judgment and the parties have stipulated that the case be disposed of on the plead-

ings, depositions, affidavits, letters, and other evidence filed in the case.

Plaintiff advances three defenses to the counterclaim, but the evidence in the case is of such nature that the Court need consider only one of these defenses.

On or about January 7, 1950 plaintiff entered into an agreement with one J. W. Steele, a West Coast Commissioned Buyer of lumber, to represent plaintiff in the purchase and in the sale of lumber in that area. Despite his general ignorance of Government lumber auctions and despite the fact he had never had any experience with Government contracts, Mr. Steele attended a lumber auction held in Portland, Oregon, as a representative of plaintiff, on or about October 9, 1950. Shortly before this auction he registered as an authorized representative of plaintiff. The lumber auction was under the immediate supervision of Mr. R. G. O'Neel, Chief of the Lumber Branch United States Corps of Engineers, Portland, Oregon. While Mr. O'Neel was experienced in purchasing lumber for the Corps of Engineers since 1946, he had supervised only one auction prior to the auction of October 9, 1950. For the auction the Corps of Engineers had solicited bids for so-called stringer lumber of various dimensions, comprising a total of 2,900,000 feet. Individual bidders were limited to a bid of one-third of each category of the schedules of lumber desired.

The three lowest bidders were, as follows:

Weyerhaeuser Timber Company, $89.75 per 1000 FBM.

C. D. Johnson Lumber Company, $89.00 per 1000 FBM.

L. U. West Lumber Company, $80.00 per 1000 FBM.

The evidence in the case shows that Weyerhaeuser and Johnson are two of the largest lumber companies in the United States.

After all bids had been collected and examined by Mr. O'Neel and his associates, the successful bidders were announced over a loud speaker and because of the wide variation between the bid submitted by Mr. Steele and those of the other successful bidders, Mr. Steele made inquiry as to wherein he had erroneously interpreted the invitation for bids. It developed immediately that the invitation for bids specified for the delivery of the lumber at the price bid F.A.S. Vessel at any deep water harbor in the vicinity designated. Mr. Steele had submitted a bid F.O.B. Mill. Mr. Steele immediately went to Mr. O'Neel, advised him of the error, and endeavored to be relieved from his mistake. Mr. O'Neel quite curtly informed him that he had a contract and would be expected to fulfill it. The bid did not in fact constitute a contract but a formal contract was executed and sent Mr. Steele on October 16th, 1950. It did not require Mr. Steele's signature. The bids submitted by the respective parties disclose that Weyerhaeuser Timber Company had offered to supply any quantity up to the total of the invitation at the bid submitted by it. An examination of the bid submitted by Mr. Steele in behalf of plaintiff discloses that due to his inexperience and lack of knowledge he did not know how to and did not properly make out a bid. In spite of the obvious error in the bid submitted by Steele, the defendant seeks in this case to hold plaintiff liable for the difference in his bid and what it paid ($95.00 per 1000 FMB) for lumber it needed to meet its requirements.

The Court used the expression "obvious error" in the above sentence advisedly, for the reason that the record in this case completely satisfies this Court that there was an error in the Steele bid; that it was obvious on the face of the bid that Mr. O'Neel was fully aware of that fact when he declined to permit Mr. Steele to withdraw his bid or to correct it by increasing the bid to cover the difference in F.O.B. Mill and F.A.S. Vessel prices.

The question before the Court is whether, under such circumstances, plaintiff is liable to defendant despite the error.

Since the bid submitted by Steele in behalf of plaintiff was clearly out of line and obviously erroneous, this Court finds and holds that defendant had no right to accept the bid and has no right in this suit to hold the bidder liable.

This case is even better on its facts than was the case of Moffett, Hodgkins and Clarke Company v. City of Rochester, 178 U.S. 373, 20 S.Ct. 957, 44 L.Ed. 1108, and there the Supreme Court held that the City of Rochester could not accept an obviously erroneous bid and hold the bidder liable. See also, 3 Corbin Contract, Sections 609 and 610; City of New York v. Dowd Lumber Company, 140 App.Div. 358, 125 N.Y.S. 394. See also, Union & People's Nat. Bank v. Anderson-Campbell Co., 256 Mich. 674, 240 N.W. 19, 80 A.L.R. 586, Daddario v. Town of Milford, 296 Mass. 92, 5 N.E. 2d 23, 107 A.L.R. 1451.

The Court finds and holds that defendant is not entitled to recover on the counterclaim and final judgment will be entered in this case in plaintiff's favor for the balance due him by the defendant.